666 P.2d 1258

STATE of New Mexico,
Plaintiff-Appellee,

v.

Gerald E. DONALDSON, Jr., and Deborah J. Stegall, Defendants-Appellants.

No. 5969/5972.

Court of Appeals of New Mexico.

May 17, 1983.

Certiorari Denied June 30, 1983.

Paul G. Bardacke, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Chris Key, Albuquerque, Winston Roberts-Hohl, Santa Fe, for defendants-appellants.

## OPINION

DONNELLY, Judge.

Defendants, Gerald E. Donaldson and Deborah J. Stegall, each appeal their convictions for trafficking in cocaine, contrary to NMSA, 1978, § 30–31–2 (Cum.Supp.1982) (as amended 1981) and NMSA 1978, §§ 30–31–6, 30–31–7, and 30–31–20(A)(2) (Repl. Pamph.1982). Defendants were jointly indicted and tried in a non-jury trial in the district court. The two appeals have been consolidated before this court.

Five issues are presented on appeal: (1) lack of probable cause in the affidavit for search warrant; (2) claim of substantial omissions and misrepresentations in affidavit for search warrant; (3) legality of car search; (4) sufficiency of the stipulated evidence; and (5) terms of Stegall's probation. We affirm.

*Facts*

The State and both of the defendants stipulated in writing to all material facts. Acting on information from a confidential informant, police placed defendant Donaldson and his residence under surveillance. The stipulation of facts set out, *inter alia*, that Donaldson lived in an apartment in Albuquerque N.E., and that he was the registered owner of a 1972 Porsche automobile. On August 29, 1981, police observed the defendants board a flight to Las Vegas, Nevada. They returned seventy-two hours later. Police ascertained that defendants had purchased reservations under ficticious names, "J. Jefferson" and "D. Jefferson," and had paid for the air travel in cash.

On September 1, 1981, at approximately 12:40 a.m., a police stake-out observed the Porsche automobile owned by Donaldson pull into a parking lot near his apartment; at the same time, a blue 1977 Volkswagen Scirrocco automobile registered to defendant Donaldson's brother also arrived. Police surveillance revealed that the Porsche was driven by a man and the Volkswagen driven by a woman. Thereafter, the individuals who had driven the cars were seen carrying baggage and other objects into Donaldson's apartment. Approximately 30 minutes later, the two individuals moved a large bag from the Porsche to the Volkswagen; then the woman drove away in the Volkswagen. Shortly thereafter, the driver of the Volkswagen (subsequently determined to be Stegall) was observed carrying a shopping bag from the car to her apartment.

State police agents obtained a search warrant to search Donaldson's apartment. In the course of their search, police seized approximately four pounds of suspected cocaine, $10,690.00 in cash, and a .357 Magnum revolver. Subsequent chemical testing confirmed that the substance seized contained cocaine. Police also obtained an additional search warrant for the residence of Donaldson's brother. While police were in the process of executing this search warrant, officers saw defendant Stegall in the blue Volkswagen drive by slowly. As police approached the vehicle, Stegall drove away at a high rate of speed. A police car undertook pursuit, and approximately ten minutes later police located the Volkswagen locked and parked near another residence. Defendant Stegall was discovered in the house and was placed under arrest; the Volkswagen was towed away by the police. Stegall denied having the keys to the vehicle but later admitted having them when police began to inventory her belongings.

Police obtained and executed a search warrant for the Volkswagen; they found a sealed cardboard box containing approximately 18 pounds of suspected cocaine. The substance seized was analyzed by state police; tests confirmed the presence of cocaine.

On September 17, 1981, several items of evidence were turned over to police by a person living in the residence where Stegall was arrested. The items were a prescription bottle with the name "Deborah Stegall" on it, a gold-colored cocaine container, and an inhaling device.

## I. *Issues as to Probable Cause*

Defendants contend the trial court erred in denying their motion to suppress the evidence seized from Donaldson's apartment, that the affidavit in support of the search warrant was insufficient to establish probable cause for a warrant's issuance and failed to substantiate the credibility of the confidential informant or to verify his reliability. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

The affidavit submitted in support of the search warrant for Donaldson's apartment was sworn by Gilbert Baca, a State Police narcotics agent. It consisted of single spaced typewritten material set out in two and one-half legal-sized pages and described both facts concerning the police surveillance of defendant and information provided by an undisclosed confidential informant. The affidavit stated in part:

> The [confidential] informant (CI) advised us that it (informant) knows a person named "Jerry" or "Gerry" Donaldson who drives a black over orange over black early 1970's Porsche automobile and who lives in Apartment # 718 of the Villa Del Oso Apartments * * * in Albuquerque. Informant advises that it * * * has personally been inside Donaldson's Apartment # 718 on several occasions within the summer of 1981, and * * * observed quantities of white powder which Donaldson was representing as "coke" or cocaine. CI advises that * * * it (CI) observed cocaine in the above apartment

> # 718 * * * within the period 20 August–1 September 1981 (exact day or days not specified here in order to help protect the informant's identity * * *). The CI further advises * * * that it (CI) has personally heard Donaldson talk within CI's presence or hearing and admit that he * * * has an ongoing business of dealing Cocaine * * * CI advises that it heard these admissions by Donaldson * * within the period 20 August–1 September 1981. The CI knows the above substances it saw on above occasions in the summer of 1981 was Cocaine because the CI admits having personally possessed and sold Cocaine in the past. * * * Also, advises CI, Donaldson admits [sic] in CI's hearing on various occasions in the summer of 1981 that he (Donaldson) has an ongoing business of selling cocaine, much of which he (Donaldson) keeps or sells from his above apartment # 718.

■ "Probable cause" which will authorize the issuance of a search warrant requires a showing of a state of facts which leads a judge or magistrate, acting in a neutral capacity and as a prudent man, to reasonably believe that an accused, at the time of the application for warrant, is in possession of illegal property or the fruits of a crime or that evidence relating to the commission of a crime exists on the premises sought to be searched. *State v. Snedeker,* 99 N.M. 286, 657 P.2d 613 (1982); *State v. Duran,* 90 N.M. 741, 568 P.2d 267 (Ct. App.1977); *see also Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

■ As stated in *State v. James,* 91 N.M. 690, 579 P.2d 1257 (Ct.App.), *cert. denied,* 91 N.M. 751, 580 P.2d 972 (1978), " 'probable cause' means a reasonable ground for belief of guilt. It exists where the facts and circumstances within the knowledge of the officers, based upon reasonably trustworthy information, is sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed. *State v. Ledbetter,* 88 N.M. 344, 540 P.2d 824 (Ct.App.1975)." *See Dumbra v. United States,* 268 U.S. 435, 45

S.Ct. 546, 69 L.Ed. 1032 (1925). "Probable cause" refers to the degree of proof necessary to justify the issuance of a search warrant; it is more than a suspicion or possibility but less than a certainty of proof. *Frantom v. State,* 195 Md. 163, 72 A.2d 744 (1950); *People v. Ball,* 639 P.2d 1078 (Colo.1982); *see also* Annot., 24 A.L.R. Fed. 107 (1975).

■ Statements attributed to an unnamed confidential informant and appearing in an affidavit for search warrant must be supported by facts indicating the reliability of informant. *Aguilar v. Texas, supra. See generally* Annot., 10 A.L.R.3d 359 (1966). In *People v. Ball, supra,* the court recognized the two-pronged test of Aguilar-Spinelli as follows:

> Where probable cause is predicated on information from an undisclosed informer, the affidavit must allege sufficient facts from which the issuing judge may independently determine (1) the validity of the informer's belief that seizable objects are on the premises to be searched and (2) the credibility of the informer or the reliability of his information. *E.g., Spinelli v. United States, supra; Aguilar v. Texas, supra* * * *.

■ The standards for determination of probable cause for the issuance of a search warrant are: (1) only a probability of criminal conduct need be shown; (2) there need be less vigorous proof than the rules of evidence require to determine guilt of an offense; (3) common sense should control; (4) great deference should be shown by courts to a magistrate's determination of probable cause. *State v. Snedeker, supra.* Information furnished by an informant must be sufficiently corroborated or verified to an extent sufficient to establish the informant's credibility. NMSA 1978, Crim.P.R. 17(f); *State v. Baca,* 97 N.M. 379, 640 P.2d 485 (1982); *see also State v. Jones,* 96 N.M. 14, 627 P.2d 409 (1981).

■ In determining probable cause, the court must interpret the affidavit in a common sense and realistic fashion and must not require technical requirements of elaborate specificity. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Due consideration may properly be given, in any facial review of the affidavit, to the fact that affiant was a law enforcement officer, and to the effect of his experience and training, when determining the significance of his surveillance and observations in the context of probable cause. *People v. Ball, supra.*

■ Sufficient corroborative facts were detailed in the affidavit, together with reasonable inferences therefrom, to indicate the underlying circumstances which formed affiant's belief that a crime was being committed, and the basis of the belief as to the reliability of the statements of the confidential informant. The affidavit recites that police checked on various aspects of the informant's story. Police officers verified that an individual named "Donaldson" in fact lived in apartment # 718 at Villa Del Oso Apartments in Albuquerque; that a black and orange Porsche seen near the apartment was registered to Gerald E. Donaldson; that Donaldson was a student at the University of New Mexico; that the rental cost of Donaldson's apartment was approximately $245.00, plus utilities; and that Donaldson had no known job or work providing a legitimate source of income. The affidavit further described the suspicious activities of Donaldson after being placed under surveillance: he and a female companion drove the Porsche to the Albuquerque International Airport and flew to Las Vegas, Nevada, and returned; Donaldson and his girlfriend used the false names of J. Jefferson and D. Jefferson to obtain the tickets; Donaldson paid for the tickets with cash; and the trip lasted only about 72 hours.

## II. *Claim of Omissions and Misrepresentations*

Defendant Donaldson argues that the seizure of evidence from his apartment should be invalidated because of "omissions" and misrepresentations in the affidavit in support of the search warrant. Evidence elicit-

ed at the suppression hearing revealed that the affiant misrepresented facts contained in the affidavit by stating that the confidential informant had not been arrested prior to August, 1981. In fact, evidence indicated that the informant had been arrested prior to September 1, 1981, for selling a substantial quantity of cocaine to undercover police agents. Baca testified that this fact in the affidavit had been misstated in order to protect the informant's identity. Baca stated in the affidavit that Donaldson's Porsche automobile was "an expensive automobile and expensive to insure." At the suppression hearing, Donaldson introduced an exhibit consisting of a police report which described his car as a 1972 Porsche valued at only $1,500.00.

■ In determining the sufficiency of a search warrant, the court is not required to look beyond the face of the affidavit unless a party attacking the validity of the warrant makes sufficient challenge to the veracity of statements made in the affidavit, supported by an offer of proof to indicate that the affidavit contained material deliberate falsehoods or a reckless disregard for the truth. *State v. Cervantes,* 92 N.M. 643, 593 P.2d 478 (Ct.App.), *cert. denied,* 92 N.M. 621, 593 P.2d 62 (1979); *State v. Gutierrez,* 91 N.M. 542, 577 P.2d 440 (Ct.App.1978). When deliberate misrepresentations or statements resulting from a reckless disregard for the truth are shown to be contained in an affidavit, the challenged material must be set aside and the balance of the affidavit scrutinized to determine whether there remain sufficient other facts to support a finding of probable cause. *State v. Cervantes, supra.* Any deliberate misstatement contained in an affidavit lessens the credibility of the affiant and where the misstatement is shown to be material and the remaining portions of the affidavit are insufficient, these factors may result in the voiding of the search warrant or suppressing the items seized.

■ The issue of whether facts intentionally omitted or misstated in an affidavit are of such materiality that their non-disclosure or misstatement may lead to invalidating the search warrant, turns on whether these facts, because of their inherent probative force, give rise to a substantial probability that, had the information been set out or correctly stated in the affidavit, it would have altered a reasonable magistrate's determination of probable cause. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

■ Considering all of the other information contained in the affidavit, together with the reasonable inferences to be derived therefrom, the affidavit was sufficient to support a finding of probable cause for the issuance of the search warrant. The trial court did not err in its refusal to suppress the evidence seized from defendant's residence.

### III. *Legality of the Car Search*

■ Defendants also challenge the legality of the search of the sealed cardboard box found in the Volkswagen. A motion to suppress evidence seized from the automobile was joined in by both Donaldson and Stegall. The record does not indicate that the trial court ever ruled on this motion; however, motions not ruled on within 30 days are deemed denied. NMSA 1978, Crim.P.R. 33(f) (Cum.Supp.1982). The pretrial suppression hearing held by the court related to the evidence seized from Donaldson's apartment. At trial, defendants *inter alia* stipulated to the following facts:

7. On September 1, 1981 at approximately 5:50 p.m., a search warrant for the 1977 Scirrocco [Volkswagen] driven by Defendant Stegall was executed by narcotics agents. During the course of this search, approximately eighteen (18) lbs. of suspected cocaine was found in the vehicle in a sealed cardboard box. This suspected cocaine was later analyzed by the New Mexico State Police Crime Lab, and the analysis was positive for the presence of cocaine.

Defendants argue that the affidavit for the search warrant for the automobile was deficient because the warrant was also based in part on the warrant obtained to

search Donaldson's apartment. Defendants contend that a search warrant specifically authorizing a search of the box in the vehicle was necessary in order to legally seize and search the container.

Under the stipulated facts presented to the trial court, there is no showing by either defendant as to any basis for standing on their part to challenge the search of the Volkswagen or its contents. The Volkswagen was not owned by either of the defendants; neither defendant was in the vehicle when it was impounded and searched. Stegall's only connection with the car was that she had driven the car prior to its seizure and had subsequently left it at another location.

The Fourth Amendment guarantee against unreasonable searches and seizures protects notions of possession and legitimate expectation of privacy. *State v. Foreman,* 97 N.M. 583, 642 P.2d 186 (Ct. App.1982); *State v. Waggoner,* 97 N.M. 73, 636 P.2d 892 (Ct.App.1981). Determination of what constitutes a reasonable expectation of privacy involves two questions: (1) whether the individual by his conduct has exhibited an actual (subjective) expectation of privacy, *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); and (2) whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable. *Id.; see also State v. Barry,* 94 N.M. 788, 617 P.2d 873 (Ct.App.), *cert. denied,* September 25, 1980. Defendants may only claim the benefits of the exclusionary rule if they make a showing that their own Fourth Amendment rights have been in fact violated. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Waggoner, supra.*

Defendants argument must also fail on other grounds. The record filed with this court on appeal does not contain a copy of the search warrant which was issued to the police authorizing the search of the vehicle. Defendants concede that, prior to searching the Volkswagen, the police in fact obtained a search warrant authorizing a search of the vehicle. The record does contain an affidavit for the search of the vehicle and which recites that affiants seek to search a "Blue 1977 Volkswagen Scirrocco, NM License No. DED–915, Vehicle Identification No. 5372016198" and that "[t]he foregoing vehicle and articles therein to be searched are located in Albuquerque, Bernalillo County, New Mexico, and in said vehicle *and the contents thereof* there is now being concealed * * * cocaine in unknown quantities * * *." [Emphasis supplied.] There is nothing in the record before us indicating that the search of the automobile exceeded the scope of the search warrant. *See also United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *State v. Capps,* 97 N.M. 453, 641 P.2d 484 (1982).

## IV. *Sufficiency of Evidence*

Defendants contend the evidence was insufficient to support their convictions for trafficking in cocaine. In passing upon this contention, an appellate court must view the evidence in a light most favorable to the State, resolving all conflicts therein and indulging all permissible inferences therefrom in support of the verdict of the trial court. *State v. Tovar,* 98 N.M. 655, 651 P.2d 1299 (1982). The standard of review is whether substantial evidence justifies a rational trier of fact to find beyond a reasonable doubt every element essential to the convictions. *Id.*

The evidence presented at trial indicated Donaldson was the sole occupant of the apartment where the drugs and money were seized. There is no evidence that anyone else resided at that address. Constructive possession may be shown by proof of knowledge of the presence of the controlled substance and control over it. *State v. Herrera,* 90 N.M. 306, 563 P.2d 100 (Ct. App.), *cert. denied,* 90 N.M. 636, 567 P.2d 485 (1977); *State v. Montoya,* 85 N.M. 126, 509 P.2d 893 (Ct.App.1973). Proof of possession of a large quantity of a controlled substance, inconsistent with personal use, is sufficient proof of trafficking in a con-

trolled substance. *State v. Quintana*, 87 N.M. 414, 534 P.2d 1126 (Ct.App.), *cert. denied*, 88 N.M. 29, 536 P.2d 1085, *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

Stegall contends that she did not have knowledge or control over cocaine seized from the Volkswagen automobile. The evidence, however, was sufficient to give rise to a reasonable inference that she had knowledge of the presence and control over the cocaine seized in the vehicle she was seen driving moments before. When police approached the Volkswagen driven by Stegall at the residence of Donaldson's brother, she drove away at a high rate of speed, attempting to elude police. When she was arrested a short time later, Stegall denied several times that she had the keys to the vehicle, but later she admitted that she had them when agents began an inventory of her belongings. Upon a search of the vehicle, approximately eighteen pounds of cocaine was found. Implements for the use of cocaine were turned over to the police by the occupant of the residence where defendant Stegall was located and arrested after the chase. These items were found with a prescription bottle containing the name of "Deborah Stegall."

Proof of possession may be established by evidence of the conduct and actions of a defendant, *State v. Bauske*, 86 N.M. 484, 525 P.2d 411 (Ct.App.1974), and by circumstantial evidence connecting defendant with the crime.

The evidence was sufficient to support the verdicts.

## V. *Terms of Probation*

The trial court suspended the sentence imposed upon defendant Stegall and ordered that she be placed upon five years' probation. Included in the order of probation was the following provision:

5. You shall not associate with any person having a criminal record or any person of bad reputation. This condition can be modified in writing by your Probation Officer for reasons of employment, participation in self-improvement programs, legitimate convenience in living arrangements, or for any other necessary reason deemed appropriate by your Probation Officer.

The order of probation was agreed to by Stegall. On appeal, defendant argues that the effect of the order was to prevent her from associating with her co-defendant with whom she had formed a close personal relationship, that the order was improper, and that this condition of her probation should be stricken.

Defendant contends the probationary provision complained of is jurisdictional and illegal. We disagree. Section 31–20–6, NMSA 1978 (1981 Repl.Pamph.), authorizes the district court to "attach to its order deferring or suspending sentence such reasonable conditions as it may deem necessary to ensure that the defendant will observe the laws of the United States, the various states and the ordinances of any municipality."

Probation is an act of clemency resting in the sound discretion of the trial court. *Ewing v. State*, 80 N.M. 558, 458 P.2d 810 (Ct.App.1969). The broad general purposes of probation are education and rehabilitation, without the requirement of serving the suspended period of incarceration. Probation is not meant to be painless. *State v. Baca*, 90 N.M. 280, 562 P.2d 841 (Ct.App.1977); *see also* III A.B.A. *Standards for Criminal Justice* § 18–2.3 (2nd Ed.1982).

A judge, in fashioning the terms of probation, may impose conditions reasonably related to the probationer's rehabilitation, which are designed to protect the public against the commission of other offenses during the term, *United States v. Tonry*, 605 F.2d 144 (5th Cir.1979), and which have as their objective the deterrence of future misconduct. *See State v. Gardner*, 95 N.M. 171, 619 P.2d 847 (Ct.App.), *cert. denied*, October 6 (1980).

A trial court has broad discretion in imposing probation upon a convicted defendant, and the court's discretion will not

be set aside on review unless the terms and conditions of probation (1) have no reasonable relationship to the offense for which defendant was convicted, (2) relate to activity which is not itself criminal in nature *and* (3) require or forbid conduct which is not reasonably related to deterring future criminality. *People v. Goss,* 109 Cal.App.3d 443, 167 Cal.Rptr. 224 (1980); *People v. O'Rourke,* 105 Cal.App.3d Supp. 1, 165 Cal. Rptr. 92 (1980). *See generally* Annot., 99 A.L.R.3d 967 (1980).

The condition of probation prohibiting defendant Stegall from having contact with persons with a criminal record, including her co-defendant Donaldson, was a reasonable term of probation considered in light of the standards enunciated above and since Stegall's only criminal activity had centered around her involvement with Donaldson, the condition was intended to prevent the commission of further crime and was reasonably related to her rehabilitation.

The judgments and sentences of defendants are affirmed.

IT IS SO ORDERED.

LOPEZ and NEAL, JJ., concur.