2007-NMCA-116

166 P.3d 1129

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Nolan HINAHARA, Defendant–Appellee.**

**No. 25,728.**

Court of Appeals of New Mexico.

June 22, 2007.

Certiorari Denied, No. 30,544, Aug. 30, 2007.

Gary K. King, Attorney General, James W. Grayson, Assistant Attorney General, Santa Fe, NM, for Appellant.

Jody Neal–Post, Michael V. Davis, Albuquerque, NM, for Appellee.

## OPINION

ROBINSON, Judge.

{1} The State appeals the district court's order suppressing sexually explicit images of minors retrieved pursuant to a search of Defendant's computer. The district court determined that the search warrant was not sufficiently particularized under the Fourth Amendment and that it did not authorize a search of the hard drive of Defendant's computer. We hold that the search warrant and affidavit were sufficiently particularized. Additionally, we hold that the search of all files on Defendant's hard drive for illegal images was within the scope of the search warrant. We therefore reverse the district court's suppression order and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Defendant was charged with multiple counts of sexual exploitation of a minor, contrary to NMSA 1978, § 30–6A–3(A) (2001), and with aggravated assault against a household member, contrary to NMSA 1978, § 30–3–13 (1995). The sexual exploitation of a minor charges arose out of images depicting minors engaged in sexual activity discovered on the hard drive of Defendant's computer. The search warrant affidavit and the testimony at the suppression hearing established that Defendant's adult daughter, Kimiko, contacted police, reporting that Defendant had threatened her with a gun and also possessed child pornography. Detective Michael Pelligrini then went to Defendant's residence where, at that time, Kimiko and her partner, Erin Gundlach, lived with Defendant. Kimiko and Erin stated that they discovered images of child pornography under the mattress in Defendant's bedroom. The images appeared to have come from the internet and depicted what Kimiko and Erin described as "young children who were naked in sexually explicit poses." Kimiko stated that when she confronted Defendant about the images, he threatened her with a gun and discharged it near her head. Detective Pelligrini also interviewed Defendant, who said that he had removed the printed images from his home and thrown them away in a trash can before Detective Pelligrini arrived. Detective Pelligrini was not able to locate the images.

{3} Based on this information, Detective Pelligrini sought a search warrant, requesting to seize all "firearms, magazines, ammunition and gun cases, computers, video tapes, computer diskettes, CD[s], DVDs, photographs and magazines containing child pornography or any other miscellaneous items." The search warrant authorized police to search the property described in the affidavit and, by its terms, incorporated the affidavit into the warrant. Police then seized Defendant's computer and gave it to the FBI for analysis.

{4} Agent Jane Bales, an FBI forensic computer examiner, testified that she made an exact copy of Defendant's hard drive and isolated the image files from e-mails and text documents using various programs. Agent Bales also searched the free space on Defendant's hard drive to recover deleted images. Agent Bales testified that she looked at every graphic on the computer, including deleted images, in thumbnail form. If she saw an

image that appeared to her to be child pornography, she extracted it and placed it on another disk, which was then given to an agent for review. Agent Bales also testified that, in addition to viewing graphics, she looked at all of the e-mails and text documents because images can be attached to e-mails and hidden within text documents. Agent Bales testified that, based on the terms of the search warrant and affidavit, she limited her search to evidence relating to child pornography.

{5} FBI Agent Robert Georgi testified that he received a disk from Agent Bales, containing images that she extracted from Defendant's hard drive. The disk also contained e-mails, tending to show that Defendant purchased child pornography over the internet. Agent Georgi then reviewed the images and identified those that he believed constituted child pornography.

{6} Defendant moved to suppress the images as the product of an unconstitutional search, arguing that the search warrant was insufficiently particular and that the search exceeded the scope of the warrant. The district court suppressed all evidence retrieved from Defendant's computer, finding that the search warrant did not "state with particularity what is to be seized, what is to be looked at, what is to be reviewed." The court also found that the search warrant did not authorize a search of the computer's hard drive. We disagree and therefore reverse.

{7} In reviewing the grant of a suppression motion, "we review the district court's ruling ... to determine whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the prevailing party." *State v. Branham*, 2004–NMCA–131, ¶ 8, 136 N.M. 579, 102 P.3d 646 (internal quotation marks, alteration, and citation omitted). The district court's determination that a search warrant is insufficiently particular is reviewed de novo. *See United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir.1997); *see also State v. Gutierrez*, 2004–NMCA–081, ¶ 4, 136 N.M. 18, 94 P.3d 18 (stating that appellate courts "apply a de novo standard of review to the [district] court's application of law to the facts").

## II. DISCUSSION

### A. Particularity of the Search Warrant

{8} The Fourth Amendment directs that "no warrants shall issue, but on probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer[.]" *Marron v. United–States*, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927); *see State v. Dobbs*, 100 N.M. 60, 65, 665 P.2d 1151, 1156 (Ct.App.1983). "This requirement is aimed at preventing 'general, exploratory rummaging in a person's belongings.'" *State v. Jones*, 107 N.M. 503, 504–05, 760 P.2d 796, 797–98 (Ct.App.1988) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)).

{9} "The test for particularity is whether an executing officer reading the description in the warrant would reasonably know what items are to be seized." *State v. Patscheck*, 2000–NMCA–062, ¶ 8, 129 N.M. 296, 6 P.3d 498 (internal quotation marks and citation omitted). "The degree of specificity required in a search warrant, however, varies depending upon the circumstances and types of items seized." *Id.* ¶ 7. "A description in a search warrant is sufficient if the description enables the officer to identify the place intended to be searched [or item to be seized] with reasonable effort." *State v. Rotibi*, 117 N.M. 108, 113, 869 P.2d 296, 301 (Ct.App. 1994).

{10} Viewing the search warrant and accompanying affidavit under these standards, we believe that the particularity requirement was met. The warrant in this case authorized the seizure of "firearms, magazines, ammunition and gun cases, computers, video tapes, computer diskettes, CD[s], DVDs, photographs and magazines containing child pornography or any other miscellaneous items." The search warrant affidavit recited facts establishing probable cause to believe

that Defendant possessed child pornography on his computer, and that he committed an assault with a gun. All of the items sought in the warrant were potentially connected with the assault and the child pornography described in the affidavit. *See State v. Gonzales*, 2003–NMCA–008, ¶ 34, 133 N.M. 158, 61 P.3d 867 (finding the search warrant sufficiently particular where all the items sought were potentially connected with the assault described in the affidavit); *State v. Steinzig*, 1999–NMCA–107, ¶ 39, 127 N.M. 752, 987 P.2d 409 (finding the search warrant sufficiently particular where the items described in the warrant were specifically related to the counterfeiting activity at defendant's home). We believe that these descriptions were sufficiently particular to instruct officers as to what items were to be seized from Defendant's residence. *See Patscheck*, 2000–NMCA–062, ¶ 8, 129 N.M. 296, 6 P.3d 498 (finding the search warrant was sufficiently particular where it conveyed to officers the particular items to be seized).

{11} Additionally, the search warrant and accompanying affidavit limited the officers to searching for images depicting "child pornography," "young children who were naked in sexually explicit poses," and "children in various sexual poses." We believe that these terms were sufficiently particular to focus police in the search. *See United States v. Hall*, 142 F.3d 988, 996–97 (7th Cir.1998) (holding that the phrases "child pornography, minors engaged in sexually explicit conduct, and sexual conduct between adults . . . and minors" was sufficiently particular to prevent a general search of the defendant's belongings) (internal quotation marks omitted); *United States v. Layne*, 43 F.3d 127, 132–33 (5th Cir.1995) (finding the phrases "child pornography" and "obscene or child pornographic material" in a search warrant to be sufficiently particular to limit the officers' discretion in searching) (internal quotation marks omitted). The warrant and affidavit identified specific types of items to be seized and was limited to evidence relating to the aggravated assault allegation and evidence of child pornography. The warrant was thus sufficient to limit the officers' discretion and prevent a general search of Defendant's property. *See United States v.*

*Campos,* 221 F.3d 1143, 1147 (10th Cir.2000) (holding that the search warrant was not overly broad where the warrant was directed at items relating to child pornography and did not allow an unfocused inspection of defendant's property).

{12} Defendant argues that the warrant was insufficiently particular because it did not specifically list the hard drive as an item to be seized. We disagree. Applying a common sense reading to the affidavit, we believe that the reference to computers and computer disks was sufficient to guide the officers to seize the computer's hard drive. *See Patscheck*, 2000–NMCA–062, ¶ 7, 129 N.M. 296, 6 P.3d 498 (stating that a search warrant is sufficiently particular where it adequately conveys to officers the types of materials sought); *Gonzales*, 2003–NMCA–008, ¶ 34, 133 N.M. 158, 61 P.3d 867 (applying a common sense reading to an affidavit in support of a search warrant in determining whether the description in the warrant was overbroad); *Jones*, 107 N.M. at 505, 760 P.2d at 798 (recognizing that the particularity requirement must be applied with a practical margin of flexibility depending on the type of items sought). In this case, the affidavit set out that officers were to seize "computers . . . [and] computer diskettes . . . containing child pornography." This description is sufficient to direct the officer to seize the computer's hard drive as a search of the hard drive would be required to determine whether the computer contained child pornography. *See United States v. Albert*, 195 F.Supp.2d 267, 276 (D.Mass.2002) (stating that where there was probable cause to believe that defendant's computer contained images of child pornography, the seizure of the computer and its related storage equipment was the only practical way to obtain the images). We therefore reject Defendant's argument that the failure to include the term "hard drive" in the search warrant or affidavit rendered the warrant insufficiently particular.

{13} Defendant also argues that the search warrant was insufficiently particular because Detective Pelligrini did not tell the issuing magistrate that Defendant's adult daughter lived in the home, and that the

printed images had been discarded before Detective Pelligrini could see them. However, "[a] court does not look beyond the four corners of an affidavit except where the party challenging the veracity of the warrant calls into question the truthfulness of statements made therein, or unless the challenge is substantiated by an offer or proof showing that the affidavit 'contained material deliberate falsehoods or a reckless disregard for the truth.'" *Steinzig*, 1999–NMCA–107, ¶ 36 (quoting *State v. Donaldson*, 100 N.M. 111, 117, 666 P.2d 1258, 1264 (Ct.App.1983)). The defendant has the burden to prove that the alleged omissions were both material and were deliberately made, or made with reckless disregard for the truth. *See id.* Defendant did not make this argument in district court, nor did he establish facts to show that these omissions were material, or that they were deliberately made. Accordingly, we find this argument to be without merit.

█ {14} Additionally, we do not believe that the failure to limit the search of the computer to files associated with Defendant's user name rendered the warrant insufficiently particular. The police had probable cause to believe that illegal images were contained within the computer. It was therefore reasonable for the warrant to authorize the police to search for those images in any location within the computer where those images might be contained, not just those files associated with Defendant's user name. *See State v. Capps*, 97 N.M. 453, 458, 641 P.2d 484, 489 (1982) (stating that if there is probable cause to search for a particular item, the officer can search every container and location within the permitted area where that item could be located).

{15} Defendant also argues that the magistrate would have required corroborating information had Detective Pelligrini stated the printed images had been discarded. However, this is an argument that the warrant was not supported by probable cause. As Defendant did not raise this issue in the district court, and conceded that probable cause existed, we will not address the argument on appeal. *See In re Aaron L.*, 2000–NMCA–024, ¶ 10, 128 N.M. 641, 996 P.2d 431 (stating that, on appeal, the reviewing court will not consider issues not raised in the district court unless the issues involve matters of jurisdictional or fundamental error).

**First Amendment**

█ {16} Defendant also argues on appeal that, under the state and federal constitutions, a greater degree of particularity was required because the search warrant authorized a search of images based on their content. Defendant argues that a search for images is presumptively prohibited under the First Amendment and Article II, Section 17 of the New Mexico Constitution when the content of the images is the basis for their seizure.

█ {17} We reject Defendant's First Amendment argument because the search warrant in this case sought images depicting child pornography, minors engaged in sexually explicit conduct, sexual conduct between adults and minors, and young children in sexual poses. "A search warrant infringes upon First Amendment rights if it acts as a prior restraint of protected material." *Patscheck*, 2000–NMCA–062, ¶ 11, 129 N.M. 296, 6 P.3d 498. Defendant has not cited to any authority to show that such images constitute protected material under the First Amendment. We therefore reject Defendant's assertion that a heightened degree of particularity was required because the search warrant sought materials protected by the First Amendment.

{18} Defendant also argues that more particularity was required in the search warrant under the state constitution. Defendant specifically relies on Article II, Section 17 of the New Mexico Constitution, but he raised no argument whatsoever below about this constitutional provision. Because Defendant raises the state constitutional claim for the first time on appeal, we do not address it. *See State v. Gomez*, 1997–NMSC–006, ¶¶ 22–23, 122 N.M. 777, 932 P.2d 1 (outlining steps to preserve a claim for a broader application of the state constitution).

**B. Scope of the Search Warrant**

█ {19} In addition to his particularity argument, Defendant argues that the district

court properly suppressed the evidence because the search of the hard drive exceeded the scope of the warrant. Defendant argues that the computer's hard drive was not listed in the warrant as an item to be searched and was therefore not covered by the warrant. We disagree.

{20} The warrant in this case authorized police to search computers and computer diskettes containing child pornography. Thus, a search of Defendant's computer for child pornography was authorized by the warrant. We believe that a search of a computer for images contained within the computer necessarily includes a search of those parts of a computer in which the images would be stored, including the computer's hard drive. "If there is probable cause to search for a particular item, the officer can search every container and location within the permitted area where that item could be located." *Capps*, 97 N.M. at 458, 641 P.2d at 489.

{21} Additionally, the seizure of unlawful images from within Defendant's computer was within the scope of the warrant because the warrant authorized the search of the computer for the illegal images. *See Patscheck*, 2000–NMCA–062, ¶ 18, 129 N.M. 296, 6 P.3d 498 (stating that officers did not exceed the scope of the warrant by accessing defendant's computer and printing computer documents because the officers' authority to seize the computer documents was explicit in the warrant's authorization to seize the computer and related documents); *see also United States v. Upham*, 168 F.3d 532, 536 (1st Cir.1999) (holding that where images of child pornography were contained "inside" the computer, the extraction of the unlawful images from within the computer was within the scope of a warrant authorizing the seizure of the computer and computer diskettes) (internal quotation marks omitted).

{22} Defendant also argues that the officers exceeded the scope of the warrant by searching every file contained within the hard drive. However, we believe the search of all files to determine whether they contained illegal images was within the scope of the warrant. "When searching computer files, investigators necessarily must look at all files and not just those with names suggestive of criminal activity, as few people keep documents of their criminal transactions in a folder marked [crime] records." *State v. Schroeder*, 237 Wis.2d 575, 613 N.W.2d 911, 917 (Ct.App.2000) (internal quotation marks and citations omitted). It would be unreasonable to require police to know whether an illegal image was contained in a computer file before examining the contents of the file. *See United States v. Hill*, 322 F.Supp.2d 1081, 1088 (C.D.Cal.2004) ("[I]t is impossible to tell what a computer storage medium contains just by looking at it. Rather, one has to examine it electronically, using a computer that is running the appropriate operating system, hardware and software."), *aff'd*, 459 F.3d 966 (9th Cir.2006); *Rosa v. Commonwealth*, 48 Va.App. 93, 628 S.E.2d 92, 95 (2006) (stating that because computer files "can be encrypted, hidden or misleadingly titled, stored in unusual formats, and commingled with unrelated and innocuous files that have no relation to the crimes under investigation[,]" the officer acted reasonably in opening and reviewing files in all areas of the hard drive); *see also United States v. Gray*, 78 F.Supp.2d 524, 529 (E.D.Va.1999) (stating that in searching for the items listed in the warrant, the officer was entitled to examine all of defendant's computer files to determine whether they contained items that fell within the scope of the warrant).

{23} Here, Agent Bales testified that she made an identical copy of Defendant's hard drive and viewed the contents of Defendant's hard drive to determine whether any files contained images of child pornography. Those images that appeared to be child pornography were then extracted and transferred to another disk. The extracted images were then reviewed to determine whether they constituted child pornography. We believe that this procedure was sufficient to restrict the search to locations within Defendant's computer that could contain evidence of child pornography and to restrict the nature of the items seized to evidence of child pornography as authorized by the warrant. The search remained focused on the seizure of images of child pornography, and

officers did not expand the scope of the search to look for evidence of crimes not named in the warrant. *Cf. United States v. Carey,* 172 F.3d 1268, 1273–76 (10th Cir.1999) (holding that the officers exceeded the scope of the search warrant by seizing evidence of child pornography seized under a warrant authorizing police to search the defendant's computer for evidence of drug crimes after the police had ascertained that evidence of drug crimes was not contained on the computer). For these reasons, we hold that the search of Defendant's hard drive did not exceed the scope of the warrant.

## C. Record on Appeal

{24} The initial transcript of the district court suppression hearing filed by the State did not contain counsels' closing arguments, or the district court's bench ruling granting suppression. Defendant filed a motion to dismiss the State's appeal based on the State's failure to file a complete transcript of the suppression hearing, which this Court denied. In our order denying the motion, we noted that Defendant could raise his arguments regarding the sufficiency of the appellate record in his answer brief. Before this case was submitted, the State supplemented the record with a complete transcript of the suppression hearing, which included the closing arguments of counsel and the district court's bench ruling. In his answer brief, Defendant again asks this Court to dismiss the State's appeal based on the State's failure to timely file the entire transcript of the suppression hearing.

{25} We decline to do so. In light of the fact that the complete transcript of the suppression hearing has been made available, we do not believe that Defendant has suffered any prejudice as a result of the initial incompleteness of the transcript. We therefore deny Defendant's request that we dismiss the appeal. *See State ex rel. Educ. Assessments Sys., Inc. v. Coop. Educ. Servs. of N.M., Inc.,* 110 N.M. 331, 333, 795 P.2d 1023, 1025 (Ct.App.1990) (stating that dismissal of an appeal is available in extreme cases).

## III. CONCLUSION

{26} For these reasons, we reverse the district court's suppression order and remand.

{27} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and MICHAEL D. BUSTAMANTE, Judges.